**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Roy Rusch McCarter, | Case No. 2:22-cv-00641-ART-DJA |
| Plaintiff, | |
| v. | **Order** |
| State of Nevada, et al., | |
| Defendants. | |

Under 28 U.S.C. § 1915 Plaintiff is proceeding in this action *pro se* and *in forma pauperis* (meaning, without paying the filing fee).  (ECF No. 6).  Plaintiff has filed an amended complaint that is before the Court for screening under 28 U.S.C. § 1915(e).  (ECF No. 18).  The Court screens Plaintiff's amended complaint and dismisses it without prejudice and with leave to amend.

I.    **Legal standard for screening.**

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e).  Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000).  A properly pled complaint must provide a short and plain statement of

the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions.  *Iqbal*, 556 U.S. at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice.  *Id.* at 678.  Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed.  *Twombly*, 550 U.S. at 570.  Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers.  *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

### III.    Screening the complaint.

#### A.    Defendants.

Plaintiff names nineteen Defendants on the first page of his complaint:

(1) Attorney General Aaron Ford in his individual and official capacity;

(2) Clark County District Attorney Steven B. Wolfson in his individual and official capacity;

(3) Deputy District Attorney Samuel Kern in his individual and official capacity;

(4) Deputy District Attorney Laurent in his individual and official capacity;

(5) Deputy District Attorney Thomas Thoman in his individual and official capacity;

(6) Law Student Smith in her individual and official capacity;

(7) Las Vegas Metropolitan Police Department;

(8) Sheriff Joseph Lombardo in his individual and official capacity;

(9) the City of Las Vegas;

(10) North Las Vegas Justice Court;

(11) Justice of the Peace Natalie L. Tyrrell in her individual and official capacity;

(12) Court Recorder Transcriber Sharon Euliano in her individual and official capacity;

1      (13) Eighth Judicial District Court;

2      (14) Law Office of Nobles and Yanez;

3      (15) Dewayne Nobles in his individual capacity;

4      (15) Silverado Mobile Home Park;

5      (17) Mario Cuevas in his individual and official capacity;

6      (18) Maria Victoria McCarter in her individual and official capacity;

7      (19) LVMPD Officers 1-15 in their individual and official capacity.

8      Plaintiff names twenty-two additional Defendants in the body of his complaint:

9      (1) State of Nevada Criminal Justice System;

10      (2) Las Vegas Municipal Court;

11      (3) Judge Cedrick Kern;

12      (4) Eighth Judicial Family Court;

13      (5) Judge Jaqueline Bluth;

14      (6) Judge Mary Holthus;

15      (7) Oscar Holms;

16      (8) Sebastian Hernandez;

17      (9) John Garcia;

18      (10) H. Lam;

19      (11) J. Carabaja;

20      (12) A. Stubbs;

21      (13) J. Turney;

22      (14) Christina Jersey;

23      (15) Jose De La Torre;

24      (16) Austin Daykin;

25      (17) S. Chewy;

26      (18) Staci Fason;

27      (19) Harris;

28      (20) Peralto;

1    (21) LVMPD Officers 1-16;

2    (22) Doe Supervisors 1-5.

3    **B.    Jurisdiction.**

4    Plaintiff alleges that this Court has jurisdiction over this matter under the Nevada

5    Constitution, Article VI, Section 6 and that venue is proper in the Eighth Judicial District Court.

6    (*Id.* at 5).  However, the Eighth Judicial Court is state court.  Plaintiff has filed this action in

7    federal court: the United States District Court for the District of Nevada.  So, the Nevada

8    Constitution does not establish this Court's jurisdiction over Plaintiff's claims.  As a result, the

9    Court must have either federal question or diversity jurisdiction to hear Plaintiff's claims.  28

10    U.S.C. § 1331 (federal question); 28 U.S.C. § 1332 (diversity).

11    The Court does not have diversity jurisdiction over Plaintiff's claims because Plaintiff

12    alleges that he is a citizen of Nevada and that all Defendants are also citizens of Nevada.  (ECF

13    No. 18 at 5).  For the Court to have diversity jurisdiction over a matter, the action must be

14    between citizens of different states.  28 U.S.C. § 1332(a)(1).  However, the Court does have

15    federal question jurisdiction over Plaintiff's claims because Plaintiff asserts claims for violations

16    of his Constitutional rights and violations of federal law.  *See* 28 U.S.C. § 1331.

17    **C.    Factual allegations.**

18    As a preliminary matter, the Court appreciates that Plaintiff has spent a considerable

19    amount of effort in drafting his complaint.  However, Plaintiff's allegations are often scattered,

20    non-linear, and repeated throughout his one-hundred-and-eight-page complaint and affidavit.  The

21    Court has gone to great lengths to piece together Plaintiff's allegations.

22    Plaintiff's complaint addresses three distinct incidents.  First, Plaintiff alleges that his

23    former spouse, Maria Victoria Rivera McCarter[1] fabricated a domestic violence incident in

24    August of 2018 to get Plaintiff arrested and trespassed from his home.  Second, Plaintiff alleges

25

26

27
_____

28    [1] The Court refers to Maria Victoria Rivera McCarter using her first name for clarity given her
shared last name with Plaintiff.

that he was arrested for an assault he did not commit after his daughter Princess McCarter[2] called

the police on him in March of 2019. Third, Plaintiff alleges that in April of 2019, while he was in

custody for the alleged assault, the Silverado Mobile Home Park where he lived refused to accept

his mobile home space rent and so, filed a lien against Plaintiff's property.

### 1. Domestic violence incident.

In July of 2018, Plaintiff attempted to evict Maria from his home. (*Id.* at 22, 85). To

avoid eviction, Plaintiff alleges that Maria "fabricated" a domestic violence incident on August 5,

2018. (*Id.* at 19, 20, 21, 23, 85). Plaintiff asserts that, in the police report, Officer Wood

acknowledged that Maria was the real assailant because Officer Wood reported that "Maria

'**TOOK**' Plaintiff's '**KEYS**' by means '**FORCE**' of violence." (*Id.* at 20) (emphasis in original).

Nonetheless, Officer Wood arrested Plaintiff on August 5, 2018. (*Id.* at 24, 91).

Plaintiff alleges that, after he was arrested, Maria conspired with Safe House to obtain a

temporary protective order against Plaintiff. (*Id.* at 21). Plaintiff alleges that Safe House and

Maria fabricated the fact that the incident took place at Plaintiff's residence, which caused the

issuing court to enter a temporary protective order preventing Plaintiff from returning to his

home. (*Id.* at 21). Plaintiff asserts that "Safe House's Personal participation to **CONSPIRE** in

COLLUSION with Maria[] [a]llowed Maria [to] 'QUASH' the EVICTION PROCESS." (*Id.* at

24) (emphasis in original). Because of the protective order, Plaintiff asserts that he was homeless

from August 5, 2018, until December of 2018. (*Id.* at 21).

### 2. Incident with Plaintiff's daughter.

On March 22, 2019, Plaintiff alleges that his daughter Princess asked him if she and her

children could live at Plaintiff's home. (*Id.* at 6, 53). On March 25, 2019, Plaintiff informed

Princess that she could not live with him. (*Id.* at 53). Princess began yelling at Plaintiff and

called the cops on him, resulting in Plaintiff's arrest. (*Id.* at 54). Two days later, on March 27,

2019, Plaintiff was released and returned to his home to find it locked. (*Id.* at 54). Not realizing

---

[2] The Court also refers to Princess McCarter using her first name for clarity given her shared last name with Plaintiff.

1  Princess and Paris Lee Wallace—the father of Princess' children—were inside, Plaintiff

2  attempted to enter his home using a shovel.  (*Id.* at 54).  Upon discovering Princess and Paris

3  inside his house, Plaintiff called 911.  (*Id.* at 54).  Princess also called 911.  (*Id.* at 54).

4       During the calls, Princess told 911 dispatcher Harris that Plaintiff was wielding a knife.

5  (*Id.* at 8, 55, 60).  Plaintiff claims that the audio from his call with 911 dispatcher Peralto proves

6  that Princess' accusation was false.  (*Id.* at 6-7, 56-57).  Plaintiff alleges that the 911 dispatchers

7  Peralto and Harris were deliberately indifferent to Princess' bipolar disorder, and, instead of

8  sending police, should have sent a mental health professional to the scene.  (*Id.* at 56).

9       Plaintiff alleges that LVMPD arrived on scene and entered his home without a warrant.

10  (*Id.* at 8, 12).  Officer Holm identified the clothing Plaintiff was wearing, stating "***Dad's wearing***

11  ***gray shorts, blue sweater, and black tennis shoes***."  (*Id.* at 15) (emphasis in original).  Plaintiff

12  alleges that Officer Garcia then asked, "WHAT **COLOR** IS DAD?"  (*Id.* at 15-16) (emphasis in

13  original).  Plaintiff asserts that Garcia's question demonstrates that the officers acted prejudicially

14  towards him.  (*Id.* at 16).  Even though Plaintiff complied with their orders, Plaintiff alleges that a

15  supervisor authorized LVMPD Officer Garcia to use "lo lethal" force on Plaintiff.  (*Id.* at 8).

16  Plaintiff alleges that Officers Garcia, Holm, Hernandez, and Gomez violated LVMPD's use of

17  force policy while arresting him.  (*Id.* at 12).  Plaintiff also asserts that the officers searched him

18  without a warrant for a knife.  (*Id.*).  Plaintiff alleges that officer worn body camera shows that an

19  officer eventually retrieved the knife from the kitchen counter, which knife was entered into

20  evidence.  (*Id.* at 17).  Plaintiff asserts that he never had the knife and really, Princess planted it

21  on the counter when Plaintiff had left the house, then pointed to it and told Officer Holm that

22  Plaintiff had been wielding it.  (*Id.* at 92).

23       Although Plaintiff alleges that LVMPD entered his home without a warrant and searched

24  him without a warrant, Plaintiff also appears to allege that, on the date of the incident, Magistrate

25  Judge Tyrell approved a warrant, although it is unclear for what.  (*Id.* at 13, 35).  However,

26  Plaintiff alleges that the declaration underlying the warrant was "fabricated" such that Judge

27  Tyrell found probable cause that Plaintiff had committed a "firearm" offense.  (*Id.* at 13).

28

On April 1, 2019, a criminal complaint was filed against Plaintiff, asserting that Plaintiff had violated the Nevada Revised Statutes,[3] by committing assault with a deadly weapon. (*Id.* at 13, 35). Plaintiff alleges that, in the affidavit supporting the criminal complaint against him, Defendant Officer Oscar Holm stated that Plaintiff committed the assault with a deadly weapon using a firearm, rather than a knife. (*Id.* at 13). Plaintiff was arraigned on April 1, 2019, at which arraignment Plaintiff alleges Magistrate Judge Tyrell refused to release him on his own recognizance and imposed a $10,000.00 bail. (*Id.* at 34). Plaintiff alleges that his attorney, Dewayne Nobles, failed to file a motion for Plaintiff's release on his own recognizance. (*Id.* at 84).

On April 11, 2019, Deputy District Attorney Samuel Kerns offered Plaintiff a plea deal for the firearm offense. (*Id.* at 13). Magistrate Judge Tyrell held a preliminary hearing on April 15, 2019. (*Id.* at 13, 35). At that hearing, Plaintiff alleges that Law Student Smith misled a witness and obstructed justice by trying to establish that Princess called 911 before Plaintiff. (*Id.* at 39, 72). Wallace also testified at the hearing. (*Id.* at 14-15). Plaintiff alleges that "defendants **COLLUDED** with [Wallace] before the hearing…" but that Wallace's testimony was also exculpatory. (*Id.* at 14-15). Plaintiff alleges that, at the conclusion of the hearing, Magistrate Judge Tyrell should have dismissed the charges against him. (*Id.* at 14). But instead, Magistrate Judge Tyrell found there to be slight or marginal probable cause, allowed District Attorney Laurent to amend the complaint to change "firearm" to "knife," and allowed Laurent to add a felony offense of burglary while armed with a deadly weapon. (*Id.* at 14-15, 74). Magistrate Judge Tyrell then remanded Plaintiff to custody. (*Id.* at 14).

Plaintiff alleges that the North Las Vegas Justice Court and its court reporter, Sharon Euliano[4] destroyed certain portions of the preliminary hearing transcript in an effort to destroy

---

[3] Plaintiff refers to NRS § 206.050. However, this statute does not exist. Later in the complaint, Plaintiff refers to Nevada Revised Statute § 147.140. (*Id.* at 16). However, NRS § 147.140 refers to vacancies in administration of an estate.

[4] Plaintiff later refers to court reporter "Auilno." (*Id.* at 77). It appears that he is referring to Euliano using a different spelling.

exculpatory evidence. (*Id.* at 13, 17-18, 77). However, Plaintiff also alleges that, after he pointed the errors out, the altered portions of the transcript were fixed. (*Id.* at 17-18). On April 22, 2020, plaintiff alleges that Deputy District Attorney Mariya Malkova offered him a plea deal if Plaintiff plead guilty to misdemeanor assault. (*Id.* at 38). On April 24, 2019, Plaintiff was arraigned on an information for the charges of burglary while in possession of a deadly weapon and assault with a deadly weapon. (*Id.* at 77). Plaintiff alleges that he did not receive a preliminary hearing for the burglary offenses. (*Id.* at 78).

On August 28, 2019, Plaintiff alleges that Nobles announced that he was not ready to proceed with trial. (*Id.* at 84). At that hearing, Plaintiff informed the Court that the district attorney had exculpatory evidence and asked to proceed with trial. (*Id.* at 84). Nobles requested the exculpatory evidence but disagreed with proceeding to trial immediately. (*Id.* at 84). Trial was set for November 12, 2019. (*Id.* at 84). However, on November 4, 2019, Nobles again asserted that he was not ready for trial. (*Id.* at 85). Plaintiff waived his right to counsel at that hearing and, on November 6, 2019, learned that Nobles had possession of exculpatory evidence the entire time but did not move for dismissal. (*Id.* at 85).

Plaintiff alleges that his speedy trial right was infringed because his trial was delayed due to COVID 19. (*Id.* at 78). On November 30, 2020, Plaintiff alleges that, Judge Jacqueline Bluth set a hearing (Plaintiff does not explain what the hearing was for) for May 3, 2021 and scheduled the jury trial for May 10, 2021. (*Id.* at 18, 78). However, Plaintiff asserts that Judge Mary Holthus and Deputy District Attorney Thoman then conspired to issue a bench warrant for Plaintiff's failure to appear at an April 6, 2021, hearing, despite the fact that the hearing was not until May. (*Id.* at 18). Plaintiff asserts that Defendants, and specifically, Judge Holthus and Thoman, colluded by "forging the police officer's names to the makeshift **criminal information for Burglary of a <u>Business</u> while Armed with a Deadly Weapon**." (*Id.* at 18, 37) (emphasis in original).[5] Plaintiff appears to allege that this new charge appeared on the bench warrant for his

_____

[5] Plaintiff alleges that, his motion to dismiss "uncovered that the [Criminal Justice System] had unlawfully charged him in the '**AMENDED INFORMATION**' with numerous serious felony offense(s) including '**Murder**' and '**Attempt Murder**.'" (*Id.* at 35) (emphasis in original). It is

1    failure to appear.  (*Id.* at 36).  Plaintiff moved to quash the bench warrant.  (*Id.* at 37).  Plaintiff

2    asserts that Deputy District Attorney Barbara Shifalacqua obstructed justice by objecting to

3    Plaintiff's motion.  (*Id.* at 37).

4        Plaintiff alleges that he ultimately moved to dismiss the charges against him on June 15,

5    2021, claiming that they were "tooth fairy crimes," and that the charges were dismissed the same

6    date.  (*Id.* at 4, 22, 35).  Plaintiff alleges that as a result of this prosecution, Defendants held him

7    without probable cause from March 27, 2019, to September 26, 2019.[6]  (*Id.* at 35).

8                    3.    Sale of Plaintiff's home.

9        Plaintiff alleges that he purchased his mobile home in September of 2017 from Armando

10    Ortega and Hortencia Ramos.  (ECF No. 18 at 31).  However, the Silverado Mobile Home Park

11    manager Mario Cuevas could not transfer the lease of the mobile home space Plaintiff on which

12    lived into Plaintiff's name due to Plaintiff's criminal history.  (*Id.* at 32, 33).  So, despite

13    Plaintiff's efforts to have other family members lease the space, the lease remained in the name of

14    the space's former occupants, Ortega and Ramos.  (*Id.* at 33).

15        Plaintiff asserts that he paid the space for the rent for March of 2019, but because of his

16    arrest and detention from March 27, 2019, until September 26, 2019, he was unable to pay rent on

17    the space.  (*Id.* at 32).  Plaintiff also appears to allege that Ortega and Ramos had left an unpaid

18    balance on the rent.  (*Id.* at 33-34).  Plaintiff asserts that he informed the Silverado Mobile Home

19    Park that he was in jail and that he would send his April 2019, rent with a third party, Alba

20    Rivera.  (*Id.* at 32).  However, Silverado would not allow Rivera to make the payment.  (*Id.* at 32,

21    34).  On May 7, 2019, Silverado filed a lien affidavit stating that Ortego and Ramos had failed to

22    pay rent and utilities.  (*Id.* at 34).  Plaintiff asserts that this resulted in the seizure and sale of his

23    _____

24    not entirely clear if Plaintiff is referring to the criminal information charging him with burglary of
a business with a deadly weapon.  And Plaintiff does not identify any specific defendant, instead

25    referring to the Criminal Justice System as a whole.  Because the Court cannot place Plaintiff's
allegations within the timeline of events he describes, the Court does not address these allegations

26    in the facts above.

27    [6] Later in his affidavit, Plaintiff states he was "prosecuted from March 27, 2019 until June 15,
2021."  (ECF No. 18 at 83).  Plaintiff also does not explain why he was not released until about

28    two months after the charges against him were dismissed.

1   mobile home.  (*Id.* at 31-34).  Because Cuevas listed Ortega and Ramos on the affidavit, Plaintiff

2   asserts that Silverado committed fraud.  (*Id.* at 34).

3          ***D.***    ***Claims.***

4          Plaintiff brings twelve causes of action titled: (1) due process right to determine whether

5   probable cause existed for arrest and detention; (2) seizure at gunpoint by lo lethal force

6   authorized by supervisor; (3) reasonable expectation of privacy from search of castle;

7   (4) probable cause for your arrest established upon declaration of the affiant; (5) violation of fifth

8   amendment right to a grand jury indictment; (6) bench warrant for burglary of a business while

9   armed; (7) malicious prosecution event #LLV180805002253 and #C19339568-1; (8) excessive

10  use of force; (9) failure to respond to serious mental health crisis; (10) fraud for sale of

11  manufactured home; (11) unlawful detention from March 27, 2019, to September 26, 2019; and

12  (12) obstruction of justice pursuant to 18 U.S.C. § 1503.  In many of his causes of action, Plaintiff

13  invokes multiple legal bases for his claims.  He also alleges various other violations of his rights

14  throughout his complaint.  Liberally construing Plaintiff's complaint, he brings the following

15  claims:

16          (1)     Violation of 42 U.S.C. § 1983.

17          (2)     Violation of 42 U.S.C. § 1988.

18          (3)     False arrest.

19          (4)     Deliberate indifference.

20          (5)     Violation of the Civil Rights Act of 1964 and violation of 28 C.F.R. 42.101.

21          (6)     Excessive force.

22          (7)     Malicious prosecution.

23          (8)     Conspiracy to violate civil rights.

24          (9)     Fraud.

25          (10)    Excessive bail.

26          (11)    Obstruction of justice in violation of 18 U.S.C. § 1503.

27          (12)    Deprivation of a grand jury indictment.

28          (13)    Violation of speedy trial right.

None of the liberally construed claims pass screening because Plaintiff has not alleged more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 678. While Plaintiff has included extensive facts in his complaint, those facts are often disjointed and describe only portions of the events. Plaintiff also often refers to the Defendants generally instead of identifying which Defendants took which actions. Plaintiff has omitted the factual content that would allow the Court to draw a reasonable inference that the Defendants are liable for the misconduct alleged. *Id.* He does not meet the plausibility standard which "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Because Plaintiff's complaint pleads facts that are "merely consistent with" the Defendants' liability it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). However, because it is not absolutely clear that certain of the deficiencies in Plaintiff's complaint could not be cured by amendment, the Court dismisses Plaintiff's complaint without prejudice and with leave to amend. *See Cato*, 70 F.3d at 1106. The Court further provides the legal standard for each of the claims the Court construes and instructions regarding how to cure the complaints' defects. *See McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1995) (affirming a district court's decision to dismiss a complaint after the district court gave the plaintiff three opportunities to amend the complaint along with instructions).

### 1. Violation of 42 U.S.C. § 1983.

42 U.S.C. § 1983 is not itself a source of substantive rights, but it is a method for vindicating federal rights elsewhere conferred. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). So, Plaintiff's Constitutional claims arise under 42 U.S.C. § 1983, but 42 U.S.C. § 1983 is not a separate cause of action. The Court therefore analyzes Plaintiff's claims brought under the Constitution and federal law using 42 U.S.C. § 1983 but does not construe it as a separate cause of action.

### 2. Violation of 42 U.S.C. § 1988.

42 U.S.C. § 1988 allows a court, in its discretion, to award attorney fees to the party who prevails on certain claims brought under certain federal civil rights statutes. 42 U.S.C. § 1988. The provision does not create an independent cause of action. *Moor v. County of Alameda*, 411

1    U.S. 693, 703-04 n.17 (1973).  Therefore, to the extent that Plaintiff attempts to assert a violation

2    of this statute, his claim fails.

3              3.    Unlawful arrest.

4         A claim for unlawful arrest is cognizable under 42 U.S.C. § 1983 as a violation of the

5    Fourth Amendment, provided that the arrest was without probable cause or other justification.

6    *Dubner v. City of S.F.*, 266 F.3d 959, 964-65 (9th Cir. 2001).  "Probable cause to arrest exists

7    when officers have knowledge or reasonably trustworthy information sufficient to lead a person

8    of reasonable caution to believe that an offense has been or is being committed by the person

9    being arrested."  *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).  Here, Plaintiff

10   alleges that he was arrested unlawfully without probable cause for "make-believe" crimes both

11   after the domestic violence incident with his former spouse and after Plaintiff found his daughter

12   in his home.  However, while Plaintiff provides details from the police reports, witness testimony,

13   and 911 calls from those incidents, he does not provide sufficient non-conclusory facts for the

14   Court to find that Plaintiff has alleged a claim upon which relief can be granted.

15        Plaintiff alleges that the police officers who arrested him lacked probable cause to do so

16   because both Maria and Princess fabricated the incidents leading to Plaintiff's arrest.  Regarding

17   the domestic violence incident, Plaintiff alleges that Wood should have known that Maria was the

18   real assailant because Wood reported that "Maria JUMPED on him and TOOK HIS KEYS."

19   (ECF No. 18 at 87).  Regarding the incident with his daughter, Plaintiff states that the police

20   could not have had probable cause to arrest him because the alleged assault with a deadly weapon

21   took place at 11:09:00 p.m., but the audio recording of Plaintiff's 911 call shows that between

22   11:08:57 p.m. and 11:09:41 p.m., dispatcher Peralto asked Plaintiff his name and Plaintiff

23   provided it.  (*Id.* at 9-10).  Neither of these alleged facts sufficiently show that the arresting

24   officers lacked probable cause to arrest Plaintiff because they do not demonstrate that the officers

25   lacked knowledge or reasonably trustworthy information to believe that Plaintiff was committing

26   an offense.  To the contrary, Plaintiff alleges that both Maria and Princess had reported to police

27   that Plaintiff was harming them.  While Plaintiff asserts those reports were false, that does not

28

1   mean that the police knew that they were false and thus lacked probable cause.  So, Plaintiff's

2   unlawful arrest claim fails.

3                         4.       <u>Deliberate indifference.</u>

4           Plaintiff appears to bring a deliberate indifference claim on his daughter's behalf, stating

5   that "Defendants, and each of them, provided inadequate treatment of Plaintiff's daughter during

6   a 911 emergency."  (ECF No. 18 at 4).  However, a plaintiff generally may only bring a claim on

7   his own behalf and may not raise claims based on the rights of another party.  *See Kaahumanu v.*

8   *Hawaii*, 682 F.3d 789, 797 (9th Cir. 2012).  Plaintiff's claim for deliberate indifference, brought

9   on his daughter's behalf, fails.

10                        5.       <u>Violation of the Civil Rights Act of 1964 and violation of 28 C.F.R.</u>

11                                 <u>§ 42.101.</u>

12          Under Title VI of the Civil Rights Act of 1964, "[n]o person in the United States shall, on

13  the ground of race, color, or national origin, be excluded from participation in, be denied the

14  benefits of, or be subjected to discrimination under any program or activity receiving Federal

15  financial assistance."  42 U.S.C. § 2000d.  28 C.F.R. § 42.101 is intended to implement the

16  provisions of Title VI and "to that end, no person in the United States shall, on the ground of race,

17  color, or national origin, be excluded from participation in, be denied the benefits of, or otherwise

18  be subjected to discrimination under any program or activity receiving Federal financial

19  assistance from the Department of Justice."  "To state a claim for damages under [Title VI], a

20  plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the

21  entity involved is receiving federal financial assistance."  *Fobbs v. Holy Cross Health Sys. Corp.,*

22  29 F.3d 1439, 1447 (9th Cir. 1994) (citations omitted), *overruled on other grounds by Daviton v.*

23  *Columbia/HCA Healthcare Corp.,* 241 F.3d 1131 (9th Cir. 2001).

24          Plaintiff broadly alleges that the Nevada Criminal Justice System and its participants

25  discriminated against him on the basis of race.  (ECF No. 18 at 7).  However, the criminal justice

26  system is not a distinct entity.  And Plaintiff's allegation that that he was discriminated against,

27  without more, is a legal conclusion.  While Plaintiff alleges that Officer Garcia asked, "WHAT

28  **<u>COLOR</u>** IS DAD?" which Plaintiff asserts was proof that race played a role in his arrest, the

1    Court cannot determine from that question alone that the entire criminal justice system was

2    engaged in racial discrimination. (ECF No. 18 at 16) (emphasis in original). Plaintiff's claims

3    brought under Title VI of the Civil Rights Act of 1964 and 28 C.F.R. § 42.101 therefore fail.

4              6.    Excessive force.

5         The use of excessive force by police officers in the course of an arrest can violate the

6    arrestee's Fourth Amendment right to be free from unreasonable seizures. *See White by White v.*

7    *Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986). Plaintiff alleges that officers arrested him at

8    gunpoint on March 27, 2025, and an LVMPD supervisor authorized Officer Garcia to use "lo

9    lethal" force even though Plaintiff was complying with officer commands and was unarmed.

10   (ECF No. 18 at 8, 12). Plaintiff also alleges that Officers Holm, Garcia, Hernandez, and Gomez

11   violated LVMPD's use of force policy. (*Id.* at 12). However, Plaintiff does not otherwise

12   describe the arrest, what force the officers used, or which officer arrested him. Without more,

13   Plaintiff's allegations that officers used excessive force and violated LVMPD's use of force

14   policy are legal conclusions. So, Plaintiff's excessive force claim fails.

15             7.    Malicious prosecution.

16        To prevail on a § 1983 claim of malicious prosecution, the plaintiff must show that the

17   defendant prosecuted plaintiff: (1) with malice; (2) without probable cause; and (3) for the

18   purpose of denying the plaintiff equal protection or another specific constitutional right. *Awabdy*

19   *v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (quoting *Freeman v. City of Santa Ana*,

20   68 F.3d 1180, 1189 (9th Cir. 1995)). Plaintiff alleges that he was maliciously prosecuted for the

21   incident with his daughter.[7] Plaintiff appears to assert that he was maliciously prosecuted

22   because officers lacked probable cause to arrest him. However, as outlined above, just because

23   Plaintiff asserts that Princess' version of events was false does not mean that the officers lacked

24   probable cause to arrest him. Plaintiff also alleges that the judges and district attorneys involved

25

26   _____

27   [7] The Court does not construe Plaintiff's complaint as alleging a malicious prosecution claim for
     Plaintiff's prosecution following his arrest after the incident with Maria. Plaintiff only describes
28   the arrest for this incident, not the prosecution following it.

in prosecuting him lacked probable cause to do so. However, Plaintiff's allegations are too conclusory to state a claim upon which relief can be granted.

For example, Plaintiff alleges that Magistrate Judge Tyrell approved a warrant based on a "fabricated" declaration. But, other than insinuating that the declaration described a firearm offense, Plaintiff does not explain why the declaration was fabricated, who fabricated it, or why Magistrate Judge Tyrell should have known it was fabricated. Plaintiff also alleges that Officer Holm erroneously reported in an affidavit supporting the criminal complaint against Plaintiff that Plaintiff had committed the assault with a firearm. However, Plaintiff later alleges that Judge Tyrell permitted District Attorney Laurent to amend the complaint to correct "firearm" to "knife." So, it is not clear that the inclusion of "firearm" in the complaint was malicious rather than accidental. While Plaintiff alleges that Law Student Smith misled a witness and obstructed justice, those statements are again legal conclusions unsupported by facts. Plaintiff does not explain which witness Smith misled or how. And it is not clear how Smith obstructed justice by trying to establish that Princess called 911 first. While Plaintiff alleges that Wallace colluded with prosecutors, that is again a legal conclusion. Plaintiff does not explain how Wallace colluded with prosecutors and later explains that Wallace's testimony was actually exculpatory. While Plaintiff alleges that court reporter Euliano destroyed or altered certain portions of the preliminary hearing testimony, Plaintiff also alleges that he pointed those errors out and that the docket was corrected. Plaintiff alleges that Judge Mary Holthus and Deputy District Attorney Thoman conspired to issue a bench warrant for Plaintiff's failure to appear at a hearing that was not scheduled. But Plaintiff provides no facts to support his legal conclusion that the two conspired with one another.

Ultimately, Plaintiff supports his claim for malicious prosecution primarily with legal conclusions. And where he provides facts, those facts are not sufficient enough for the Court to determine that Plaintiff has plead the elements of a malicious prosecution claim. So, Plaintiff's malicious prosecution claim fails.

8.    Conspiracy to violate civil rights.

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of an agreement or meeting of the minds' to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1301 (9th Cir. 1999)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id*. "Because conspiracies are secret agreements, '[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.'" *Davis v. Powell*, 901 F.Supp.2d 1196, 1217, (S.D. Cal. Oct. 4, 2012) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999)). However, to plead a claim of conspiracy under § 1983, a plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. *See Miller v. California*, 355 F.3d 1172, 1177 n.3 (9th Cir. 2004); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward County, Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiff's allegations regarding a conspiracy to violate his civil rights are too conclusory to state a claim upon which relief can be granted. Plaintiff alleges that Wallace colluded with prosecutors, that Judge Holthus conspired with Thoman, and that Maria conspired with Safe House. But those are legal conclusions. And although conspiracies are secret agreements, Plaintiff does not allege facts with sufficient particularity to show that these parties had an agreement to violate Plaintiff's constitutional rights or for the Court to infer the Defendants' knowledge and participation in the conspiracy. So, Plaintiff's conspiracy-to-violate-civil-rights claim fails.

9.    Fraud.

The elements of fraud under Nevada law are (1) a false representation; (2) the defendant knew or believed that the representation was false, or made the representation without a sufficient basis; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance on the representation; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff

was damaged by its reliance. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) (citing *Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1975)). Plaintiff brings his fraud claim against the Silverado Mobile Home Park and Cuevas for keeping Ortega and Ramos' name on mobile home space lease and then filing a lien affidavit stating that Ortega and Ramos failed to pay rent when Plaintiff fell behind on payments. However, it is not clear that the Silverado Mobile Home Park and Cuevas made a false statement because, as Plaintiff alleges, he was unable to get the lease into his name or the name of his family members. And Plaintiff's allegation that it was fraudulent for the Silverado Mobile Home Park to leave Ortega and Ramos' name on the lease in the first place is a legal conclusion, not a factual contention. Additionally, it is not clear that Silverado Mobile Home Park and Cuevas intended to induce *Plaintiff* to act or refrain from acting by their representation that Ortega and Ramos were the leaseholders. Without more, the Court cannot find that Plaintiff has alleged a claim for fraud and so, his claim fails.

    10.    Excessive bail.

    "The Eighth Amendment to the Constitution, applicable to the States through the Due Process Clause of the Fourteenth Amendment, provides that '[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'" *Baze v. Rees*, 553 U.S. 35, 47 (2008) (internal citation omitted). Bail is excessive under the Eighth Amendment when it is set at a figure higher than an amount reasonably calculated to ensure the asserted governmental interest. *United States v. Salerno*, 481 U.S. 739, 754 (1987); *Stack v. Boyle*, 342 U.S. 1, 4-6 (1951). To prevail on a claim under § 1983, a plaintiff must show that the putative governmental interest is invalid or that "bail was excessive in light of the purpose for which it was set." *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 661 (9th Cir. 2007). Whether the amount is beyond the plaintiff's means is irrelevant. *Id*. at 661-62. In addition, the plaintiff must demonstrate that the defendants were the "actual and proximate cause of his bail enhancement." *Id*. at 663.

    Here, Plaintiff alleges that Magistrate Judge Tyrell imposed a $10,000.000 bail and refused to release Plaintiff on his own recognizance. However, Plaintiff does not allege that this bail amount was excessive. (ECF No. 18 at 34). Instead, he appears to allege that it was

1  unnecessary because he was actually innocent.  However, Magistrate Judge Tyrell imposed this

2  bail at Plaintiff's arraignment on April 1, 2019, shortly after Plaintiff was arrested, before the case

3  proceeded to trial, and before Plaintiff ultimately succeeded in dismissing the case.  Plaintiff's

4  allegations do not establish that Magistrate Judge Tyrell should have known of Plaintiff's

5  innocence at Plaintiff's arraignment.  Because Plaintiff does not allege that his bail was excessive,

6  his claim fails.

7             11.    Obstruction of justice in violation of 18 U.S.C. § 1503.

8          18 U.S.C. § 1503 prohibits influencing or injuring a juror.  However, that provision does

9  not create a private right of action.  *See Hunt v. Fla. Corr. Facility*, No. 18-00003-DKW-KJM,

10  2018 WL 340026, at *5 (D. Haw. Jan. 9, 2018).  So, Plaintiff's obstruction of justice claim fails.

11             12.    Deprivation of a grand jury indictment.

12          The Fifth Amendment right to a grand jury indictment does not apply to state court

13  proceedings.  *Hurtado v. California*, 110 U.S. 516, 538 (1884).  The Ninth Circuit has likewise

14  held that there is no constitutional right to be charged by way of a grand jury indictment rather

15  than by information.  *See Morford v. Hocker*, 394 F.2d 169, 170 (9th Cir. 1968, cert. denied, 392

16  U.S. 944 (1968) (holding that grand jury requirement of the Fifth Amendment is not applicable to

17  the states, and prosecution via an information is not unconstitutional).  In Nevada, there is no state

18  constitutional right to a grand jury.  *See* Nev. Const. Art I § 8 ("No person shall be tried for a

19  capital or other infamous crime ... except on presentment or indictment of the grand jury, or upon

20  information duly filed by a district attorney ...")); Nev. Rev. Stat.  § 173.025 ("The several courts

21  of this state shall have and may exercise the same power and jurisdiction to try and determine

22  prosecutions upon information for crimes, misdemeanors and offenses, to issue writs and process

23  and do all other acts therein as in cases of like prosecution under indictment").  A criminal

24  defendant may be tried by way of indictment or information.  *Marcelli v. Edwards*, No. 3:14-cv-

25  00559-MMD-WGC, 2015 WL 13738834, at *8 (D. Nev. Mar. 6, 2015), report and

26  recommendation adopted, No. 3:14-cv-00559-MMD-WGC, 2016 WL 2990633 (D. Nev. May 24,

27  2016).

28

1      Here, Plaintiff asserts that he was charged by way of a complaint rather than an

2   indictment.  (ECF No. 18 at 4).  However, public records reveal that, although originally a

3   criminal complaint was filed against Plaintiff on April 1, 2019 in the North Las Vegas Justice

4   Court, after his preliminary hearing the case was bound over to the Eighth Judicial District Court

5   on April 15, 2019, and on April 18, 2019, an information was filed in the Eighth Judicial District

6   Court case.  *See State of Nevada v. Roy R. McCarter*, No. 19CRN000795-0000 (N. Las Vegas

7   Justice Court); *see State of Nevada v. Roy McCarter*, No. C-19-339568-1 (Eighth Jud. Dist.

8   Court).[8]  So, Plaintiff's claim that he was wrongfully deprived of a grand jury indictment fails.

9                      13.    Violation of speedy trial right.

10      Plaintiff invokes the sixty-day speedy trial right encapsulated in Nevada Revised Statute

11   § 178.556(1).  Although that is a state law, the Fourteenth Amendment, applying the Sixth

12   Amendment right to a speedy trial, is enforceable against the states.  *See Dickey v. Florida*, 398

13   U.S. 30, 37 (1970).  The Fourteenth Amendment provides that no state shall "deprive any person

14   of life, liberty, or property without due process of law ..."  U.S. Const. amend. XIV, § 1.  The

15   Fourteenth Amendment contains both procedural and substantive due process protections.  *United*

16   *States v. Salerno*, 481 U.S. 739, 746 (1987).  The procedural due process protection forbids the

17   government from depriving substantive rights without constitutionally adequate procedures.  *See*

18   *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008).  The substantive due process

19   protection limits what the government may do in its legislative and executive capacities by

20   protecting against the arbitrary or oppressive exercise of governmental power.  *See County of*

21   *Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).  NRS § 178.556(1) provides that "[i]f a

22   defendant whose trial has not been postponed upon the defendant's application is not brought to

23

24

---

25   [8] The Court may take judicial notice of matters of public record, including information in anther
    court's proceedings.  *See Reyn's Pasta Bella LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th
26   Cir. 2006).  While the Court takes judicial notice of the existence of these docket entries, it does
    not take judicial notice of the truth of the facts recited therein. *See Lee v. City of Los Angeles*, 250
27   F.3d 668, 690 (9th Cir. 2001) (abrogation on other grounds recognized by *Galbraith v. County of*
    *Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002)).
28

1   trial within 60 days after the arraignment on the indictment or information, the district court may

2   dismiss the indictment or information."

3          Plaintiff alleges that he was arrested on May 27, 2019, and was arraigned on April 1,

4   2019.  However, Plaintiff does not allege the date for which his trial was originally scheduled.   A

5   review of the docket sheet for his criminal case reveals that the state court held a trial setting

6   hearing on April 29, 2019, but does not show the date that the court set the trial.  *See State of*

7   *Nevada v. Roy McCarter*, No. C-19-339568-1 (Eighth Jud. Dist. Court).  Additionally, Plaintiff

8   alleges that, on August 28, 2019, his counsel sought to continue the trial.  (ECF No. 18 at 84).

9   The docket of Plaintiff's criminal case reveals that the trial date was continued multiple times.

10  However, it is not entirely clear whether this was done "upon defendant's application" such that

11  the continuances did not violate NRS § 178.556(1).  Without knowing when the trial date was

12  originally set and why it was moved, the Court cannot determine if Plaintiff has alleged a

13  violation of his right to a speedy trial.  This claim thus fails.

26  ///

27  ///

28  ///

**IT IS THEREFORE ORDERED** that Plaintiff's amended complaint (ECF No. 18) is **dismissed without prejudice** for failure to state a claim upon which relief can be granted, with leave to amend.  Plaintiff will have until **October 6, 2025,** to file an amended complaint if the noted deficiencies can be corrected.  If Plaintiff chooses to amend the complaint, Plaintiff is informed that the Court cannot refer to a prior pleading (i.e., the original complaint) to make the amended complaint complete.  This is because, generally, an amended complaint supersedes the original complaint.  Local Rule 15-1(a) requires that an amended complaint be complete without reference to any prior pleading.  Once a plaintiff files an amended complaint, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each Defendant must be sufficiently alleged.  **Failure to comply with this order will result in the recommended dismissal of this case.**

DATED: September 5, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE